```
                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF TEXAS
                            HOUSTON DIVISION

RAMBIS CHU,                          §
                                     §
      Plaintiff,                     §
                                     §
v.                                   §     CIVIL ACTION NO. H-10-2582
                                     §
TEXAS SOUTHERN UNIVERSITY,           §
                                     §
      Defendant.                     §
```

MEMORANDUM AND ORDER

Pending is Defendant Texas Southern University's Motion for Summary Judgment Pursuant to Rule 56(b) (Document No. 19), to which Plaintiff Rambis Chu has filed no response and which is therefore deemed unopposed pursuant to Local Rule 7.4. After carefully reviewing the complaint, motion, the uncontroverted record evidence, and the applicable law, the Court concludes that the motion should be granted.

I. Background

Plaintiff Rambis Chu ("Plaintiff"), a Chinese-American male, was a professor in the Physics Department of Texas Southern University from September 1995 to December 1997 and again from January 2003 through his termination on March 5, 2009.[1] Plaintiff alleges that Defendant Texas Southern University ("Defendant") has

---

[1] Document No. 1 at 3 (Orig. Complt.); Document No. 19, ex. N ¶ 9 (Ohia Aff. showing date of termination).

accused, terminated, slandered, and unfairly treated him because of his race and national origin.[2]

Plaintiff's problems at Texas Southern allegedly began in 2005, when Carlos Handy ("Handy") became Chair of the Physics Department.[3] Handy allegedly "continuously mocked Plaintiff's accent and pretended he did not understand Plaintiff," yelled at Plaintiff, harassed Plaintiff by calling his home, instructed students to boycott Plaintiff's classes and file a complaint against Plaintiff, questioned the legitimacy of Plaintiff's work, interfered with Plaintiff's business and professional relationship with Defendant, attempted to sabotage Plaintiff's tenure application, assigned Plaintiff the worst teaching schedule, "sabotaged Plaintiff's summer employment . . . by refusing to sign Plaintiff's personal action form," filed a false scientific misconduct charge against Plaintiff, and "referred to Plaintiff as a 'Lazy Chink.'"[4] Plaintiff also alleges that through Handy's actions, he was denied a promotion, was paid less than white colleagues with less experience, and was eventually terminated.[5] Defendant counters that (1) Plaintiff's failure to promote claim is barred by the statute of limitations; (2) any hostile work

---

[2] Document No. 1 at 6.

[3] Id. at 3.

[4] Id. at 3-6.

[5] Id.

2

environment claim does not meet the threshold for discrimination; and (3) Plaintiff's termination had nothing to do with his race or ethnicity but instead was due to Plaintiff allegedly plagiarizing a grant proposal in contravention of Defendant's Scientific Misconduct Policy and Faculty Manual.[6]

Plaintiff brings common law negligence and slander claims in addition to claims for discrimination on the basis of race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, discrimination and retaliation claims under 42 U.S.C. §§ 1981, 1983, and 1985, and a whistleblower claim.[7] Defendant now moves for summary judgment on all claims, contending that (1) Plaintiff's state tort claims and his claim under 42 U.S.C. § 1981 are barred by sovereign immunity, (2) his claims under 42 U.S.C. §§ 1983 and 1985 are inapplicable to Defendant because Defendant is not a "person" for purposes of those statutes, and (3) most of

---

[6] Document No. 19, ex. N ¶ 7.

[7] Plaintiff alleges a retaliation claim under §§ 1981, 1983, and 1985, but does not assert a retaliation claim under Title VII. *See* Document No. 1 at 9. Further, Plaintiff appears to assert a federal whistleblower claim as part of his claims under §§ 1981, 1983, and 1985. *See* id. Nonetheless, Plaintiff's claim under 5 U.S.C. § 2302(b) fails as a matter of law because, among other things, Plaintiff is not a federal employee. *See* Grisham v. United States, 103 F.3d 24, 26 (5th Cir. 1997) ("The Whistleblower Protection Act was enacted in 1989 to increase protections for whistleblowers by prohibiting adverse employment actions taken because a *federal* employee discloses information . . . .") (emphasis added); *see also* Jackson v. Signh, No. H-06-2920, 2007 WL 2818322, at *12 (S.D. Tex. Sept. 25, 2007) (Rosenthal, J.) (holding that plaintiff did not have a cause of action under 5 U.S.C. § 2302(b) because he was not a federal employee).

3

Plaintiff's alleged instances of discriminatory conduct occurred well before the applicable limitations periods.[8]  Regarding Plaintiff's Title VII claim for discriminatory termination, Defendant contends that Plaintiff does not produce any evidence to raise a fact issue either to establish a prima facie case or to rebut Defendant's legitimate, non-discriminatory reason for his termination.

## II.  Legal Standards

### A.  Summary Judgment

Rule 56(a) provides that summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists

---

[8] Document No. 19 at 1-2.

will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a

motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

B. Sovereign Immunity

"Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice." Warnock v. Pecos County, Tex., 88 F.3d 341, 343 (5th Cir. 1996). In evaluating a motion to dismiss pursuant to Rule 12(b)(1), a court may consider (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).

III. Discussion

A. Sections 1981, 1983, Negligence, and Slander Claims

The Eleventh Amendment to the United States Constitution provides to states sovereign immunity from suit except in limited circumstances, such as when the state consents to be sued or when Congress abrogates a state's immunity pursuant to a valid grant of constitutional authority. U.S. CONST. amend. XI; Seminole Tribe of Fla. v. Florida, 116 S. Ct. 1114, 1122-23 (1996). Eleventh

6

Amendment immunity encompasses suits by private citizens against the state in federal court. Board of Trustees of Univ. of Ala. v. Garrett, 121 S. Ct. 955, 962 (2001). As part of the State of Texas's university system, Defendant is an arm of the state to which sovereign immunity extends. *See* Chavez v. Arte Publico Press, 204 F.3d 601, 603 (5th Cir. 2000); Bisong v. The Univ. of Houston, Civil Act. No. H-06-1815, 2006 WL 2414410, at *3 (S.D. Tex. Aug. 18, 2006) (Lake, J.) (citing Chavez).

"Congress has not chosen to abrogate the states' sovereign immunity for suits under §§ 1981, 1983, and 1985(c)." Hines v. Miss. Dept. of Corrections, 239 F.3d 366, 2000 WL 1741624, at *3 (5th Cir. Nov. 14, 2000) (table) (citing Sessions v. Rusk State Hosp., 648 F.2d 1066, 1069 (5th Cir. 1981)); *see also* Baldwin v. Univ. of Tex. Med. Branch at Galveston, 945 F. Supp. 1022, 1030 (S.D. Tex. 1996). Further, there is no indication that Defendant has waived its sovereign immunity; it is therefore entitled to summary judgment on Plaintiff's §§ 1981, 1983, and 1985 claims both for damages and for injunctive relief. *See* Aguilar v. Tex. Dept. of Crim. Justice, 160 F.3d 1052, 1054 (5th Cir. 1998); Sessions, 648 F.2d at 1069 (citing Edelman v. Jordan, 94 S. Ct. 1347 (1974)); *see also* Chacko v. Tex. A&M Univ., 960 F. Supp. 1180, 1198 (S.D. Tex. 1997) (holding that Texas A&M University, as an alter ego of the State of Texas, is accorded Eleventh Amendment immunity, and

plaintiff cannot maintain §§ 1981 and 1983 claims against it), *aff'd*, 149 F.3d 1175 (5th Cir. 1998).[9]

Regarding Plaintiff's state tort claims, "the Eleventh Amendment [also] bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court." Raygor v. Regents of the Univ. of Minn., 122 S. Ct. 999, 1004 (2002). Although the Texas Tort Claims Act waives immunity for certain negligence claims, Plaintiff's negligence claim does not fall within the scope of the Act. The Tort Claims Act waives immunity for claims in part due to:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> > (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> >
> > (B) the employee would be personally liable to the claimant according to Texas law; and

---

[9] Although Defendant did not argue that sovereign immunity bars the §§ 1983, 1985, and any state whistleblower claim, the Court may consider this issue *sua sponte* because it bears on the Court's subject matter jurisdiction. *See* Burge v. Parish of St. Tammany, 187 F.3d 452, 465-66 (5th Cir. 1999). Likewise, to the extent that Plaintiff intended to bring a claim under the Texas Whistleblower Protection Act against a state entity in federal court, that claim also is barred by sovereign immunity. *See* Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 333 (5th Cir. 2002) (holding that Texas did not waive its immunity to suit under the Act in federal court, even though it waived its immunity in state court).

> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code § 101.021 (West 2011). To support his negligence claim, Plaintiff alleges that: "Defendant TSU owed a legal duty of providing a work environment free from discrimination on the basis of race, color, or national origin."[10] Plaintiff does not allege any property damage, personal injury, or death arising from the use of motor-driven equipment, nor does he allege that any personal injury or death was caused by an unsafe condition of state-owned premises such that Defendant would have waived its immunity to suit. Therefore, Plaintiff's negligence claim is barred by sovereign immunity.

Furthermore, the Texas Tort Claims Act does not waive Defendant's sovereign immunity for intentional torts. *See* Tex. Civ. Prac. & Rem. Code § 101.057(2) (West 2011); Tex. Dep't of Pub. Safety v. Petta, 44 S.W.3d 575, 580 (Tex. 2001); *see also* Ganther v. Ingle, 75 F.3d 207, 210 (5th Cir. 1996) (Texas has "explicitly refused to waive its sovereign immunity" to claims arising out of intentional torts). Slander is an intentional tort such that Defendant is immune from liability for that claim. *See* Perry v. City of Houston, No. 01-01-00077-CV, 2005 WL 995441 at *4 (Tex. App.--Houston [1st Dist.] Apr. 28, 2005, no pet.) (holding that the

---

[10] Document No. 1 ¶ 45.

City of Houston was immune to a slander suit); <u>Luengas v. Univ. of N. Tex.</u>, No. 2-06-036-CV, 2006 WL 2854374, at *2 (Tex. App.--Fort Worth Oct. 5, 2006, no pet.) (holding that the state of Texas has not waived immunity to liability for slander).  Accordingly, Plaintiff's slander claim is also barred by sovereign immunity.

B.   <u>Title VII Discrimination Claims</u>

   1.   <u>Statute of Limitations</u>

Defendant argues that, with the exception of Plaintiff's termination claim, all other alleged instances of discrimination occurred outside the limitations period and are subject to summary judgment on that basis.  In Texas, a Title VII plaintiff must file a discrimination charge with the EEOC within three hundred days after the alleged unlawful employment practice occurred. <u>Henderson v. AT&T Corp.</u>, 933 F. Supp. 1326, 1332 (S.D. Tex. 1996); *see also* 42 U.S.C. § 2000e-5(e)(1).  Plaintiff filed his charge of discrimination with the EEOC on December 9, 2008.[11]  Therefore, any discrete acts of discrimination which occurred prior to February 13, 2008, are barred by the statute of limitations.  A careful review of Plaintiff's responses to Defendant's interrogatories reveals that the only discrete act of discrimination that is alleged to have occurred within the limitations period was

---

[11] *See* Document No. 19, ex. L.

Plaintiff's termination.[12]  *See* <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 122 S. Ct. 2061, 2073 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). However, "[u]nlike in a case alleging discrete violations, a hostile environment plaintiff is not limited to filing suit on events that fall within this statutory time period because her claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'" <u>Stewart v. Miss. Transp. Comm'n</u>, 586 F.3d 321, 328 (5th Cir. 2009) (quoting <u>Nat'l R.R. Passenger Corp.</u>, 122 S. Ct. at 2073). Therefore, the only remaining Title VII claims are the hostile work environment and discriminatory termination claims; all others are barred by the statute of limitations.

2.  <u>Hostile Work Environment</u>

Plaintiff mentions "hostile work environment" as a part of his retaliation claim under Sections 1981, 1983, and 1985. Assuming this amounts to a separate--even if oblique--hostile work environment allegation, he has not presented summary judgment evidence to raise a genuine issue of material fact that he was subjected to a hostile work environment when he worked in the

---

[12] For example, Plaintiff alleges that Defendant failed to promote Plaintiff to Director of Computational Research Core Facility of Research Centers in Minority Institutions in the summer of 2007, which falls outside the applicable limitations period. *See* <u>id.</u>, ex. O at Interrogatory No. 9(1)-9(6).

11

Physics Department at Texas Southern University.[13]  To establish a hostile work environment claim, Plaintiff must show: (1) he is a member of a protected group; (2) he was a victim of harassment; (3) the harassment was based on race; (4) the harassment affected a "term, condition, or privilege" of Plaintiff's employment; and (5) Defendant knew or should have known of the harassment and failed to take prompt remedial action.  Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002).  For race-based harassment to affect a "term, condition, or privilege" of employment, as required to support a claim for hostile work environment under Title VII, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris v. Forklift Sys., Inc., 114 S. Ct. 367, 370 (1993), *abrogated on other grounds by* Burlington Ind., Inc. v. Ellerth, 118 S. Ct. 2257 (1998).  Courts look to the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Id. at 371.

As discussed above, most if not all of the alleged offending comments and acts occurred outside the limitations period.[14]  To

---

[13] *See* Document No. 1 at 3.

[14] *See* Document No. 19, ex. O at Interrogatory No. 9.

12

show that the alleged acts constitute a "continuing violation," a plaintiff must show "that the 'separate acts' are related, or else there is no single violation that encompasses the earlier acts." Stewart, 586 F.3d at 328. Plaintiff wholly fails to present any summary judgment evidence to show either that any of these alleged acts occurred or that the alleged "separate acts" are related. Plaintiff therefore does not meet his burden to raise a fact issue that a continuing violation occurred in this case, *see* id., or that he was subjected to a hostile work environment.[15] Accordingly, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

3. Termination

Title VII proscribes an employer from discharging or otherwise discriminating against any individual because of that individual's race or national origin. 42 U.S.C. § 2000e-2(a)(1). The Title VII inquiry is "whether the defendant intentionally discriminated against the plaintiff." Roberson v. Alltel Info. Servs., 373 F.3d

---

[15] The sole allegation that possibly could be construed as a continuing violation would be Plaintiff's allegation that starting in 2005, Handy "continuously mocked Plaintiff's accent and pretended he did not understand Plaintiff," which Plaintiff alleges "continues to persist." Document No. 19, ex. O at Interrogatory No. 9(1). This allegation--unsupported by any summary judgment evidence--is wholly insufficient to give rise to an actionable hostile work environment claim. *See* Alaniz v. Zamora-Quezada, 591 F.3d 761, 771 (5th Cir. 2009) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not generally not affect a "term, condition, or privilege of employment").

647, 651 (5th Cir. 2004). Intentional discrimination can be established through either direct or circumstantial evidence. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2001). Because Plaintiff presents no direct evidence of discrimination, his claims must be analyzed using the framework set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). Id. Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing, by a preponderance of the evidence, a prima facie case of discrimination. Id. To establish a prima facie case for a discriminatory discharge under Title VII, Plaintiff must prove that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he was discharged; and either (4a) he was replaced by someone outside the protected class, or (4b) others outside the protected class who were similarly situated were not terminated or otherwise were treated more favorably. *See* Bauer v. Albemarle Corp., 169 F.3d 962, 966 (5th Cir. 1999); Martin v. Kroger Co., 65 F. Supp. 2d 516, 543 (S.D. Tex. 1999) (explaining that with respect to the fourth element, the plaintiff must show that employees outside his protected class were retained or treated differently under circumstances nearly identical to plaintiff's).

Once a plaintiff has established a prima facie case, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the termination. Lee v.

14

Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009). To meet this burden, the employer must "clearly set forth, through the introduction of admissible evidence, the reasons" for its conduct. Tex. Dept. of Comm. Affairs v. Burdine, 101 S. Ct. 1089, 1094 (1981). If the employer can articulate such a reason, the inference of discrimination falls away, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative).[16] Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).

Plaintiff produces no summary judgment evidence to raise a fact issue either that Defendant replaced him with a non-Chinese professor or that it treated a non-Chinese professor more favorably than Plaintiff under nearly identical circumstances. Therefore,

---

[16] Because Plaintiff has not invoked a mixed-motive theory, his claim will be analyzed only for evidence of pretext. *See* McCoy-Eddington v. Brazos County, No. H-05-0395, 2007 WL 1217989, at *4 (S.D. Tex. Apr. 24, 2007) (confining analysis to pretext when plaintiff neither pled nor argued for mixed-motive); Johnson v. Saks Fifth Ave. Tex., L.P., Civ. A. No. H-05-1237, 2007 WL 781946, at *21 (S.D. Tex. Mar. 9, 2007) (same); *see also* Nasti v. CIBA Specialty Chems. Corp., 492 F.3d 589, 595 (5th Cir. 2007) (concluding that the plaintiff waived consideration on appeal of a mixed-motive argument by failing "to present her mixed-motives claim to the district court in the first instance").

Plaintiff fails to establish a prima facie case of discrimination under Title VII.

Furthermore, even if Plaintiff had established a prima facie case, Defendant articulated a legitimate, non-discriminatory reason for discharge: Plaintiff allegedly plagiarized a scientific grant proposal.[17]  According to the Texas Southern University Faculty Manual, "Good Causes" for termination include "[m]isappropriating and publishing as one's own the ideas or words of another."[18] Moreover, in his affidavit, Dr. Sunny Ohia, Provost and Vice President of Academic Affairs and Research at Texas Southern University, states that Plaintiff was terminated because "there was sufficient evidence of a serious violation of the American Physical Society Ethics and Values Guidelines, the Scientific Misconduct Policy, and the Faculty Manual."[19]  Indeed, Defendant produced evidence to indicate that the Scientific Misconduct Investigation Committee had concluded that Plaintiff had "committed plagiarism when he submitted the proposal under discussion."[20]  In sum, Defendant has met its burden of production to show a legitimate, non-discriminatory reason for terminating Plaintiff.  In contrast,

---

[17] *See* Document No. 19, ex. F (side-by-side comparison of Dr. Miller's earlier proposal with Plaintiff's proposal).

[18] Document No. 19, ex. J ¶ 7.1(D).

[19] Id., ex. N ¶ 7.

[20] Id., ex. I at 3 of 8 (Investigation Committee Summary Report).

Plaintiff does not produce any evidence to show that this reason was a pretext for discrimination, nor does Plaintiff controvert the allegations against him. Therefore, because Plaintiff neither established a prima facie case nor raised a fact issue that Defendant's legitimate, non-discriminatory reason for termination was a pretext for discrimination, Defendant is entitled to summary judgment on Plaintiff's Title VII discrimination claim.

## IV. Order

Accordingly, as a matter of law and based on the uncontroverted summary judgment evidence, it is hereby

ORDERED that Defendant Texas Southern University's Motion for Summary Judgment (Document No. 19) is in all things GRANTED, and Plaintiff Rambis Chu shall take nothing on his claims. It is further

ORDERED that Plaintiff's negligence, slander, 42 U.S.C. §§ 1981, 1983, 1985, and whistleblower claims are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction, and Plaintiff's Title VII claims are DISMISSED on the merits.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 27th day of January, 2012.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

17